UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

EGDALIA MAYKENE MORENO GIL, Petitioner,

v. Civil Action No. 4:26-cv-384-RGJ

JASON WOOSLEY, et al., Respondents.

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] filed by Petitioner Egdalia Maykene Moreno Gil ("Petitioner"). The United States as counsel for the Federal Respondents ("Respondents")[1] responded [DE 7], and Petitioner replied [DE 9]. Petitioner also moves [DE 11] to supplement her reply. Respondents have not responded, and the time for doing so has passed. These matters are ripe. For the reasons below, Petitioner's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED** and Petitioner's motion [DE 11] to supplement is **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela. [DE 1 at 15; DE 7 at 35]. She entered the United States without inspection and was arrested by Border Patrol at or near Brownsville, Texas on May 24, 2024, and has resided in the United States since. [DE 1 at 1; DE 7 at 35]. Petitioner was placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1). [DE 7-2 at 49]. On May 28, 2024, Petitioner was paroled. [DE 7 at 35].

[1] 28 U.S.C. § 517 allows the Office of the United States Attorney to make appearances in court to attend to the United States' interests. Respondents submitted responses in this case to attend "to the United States' interests to the extent that the petition also names a county official as a respondent." [DE 7 at 34 n.1].

On April 30, 2026, Petitioner was served with a Termination of Parole Letter, informing her that her "parole is hereby terminated, effective the date of this letter" [DE 7-4 at 54], and an administrative warrant for her arrest [DE 7-5] and was taken into Immigration and Customs Enforcement ("ICE") custody. [DE 7 at 35]. While in ICE custody, she claimed fear of returning to Venezuela. [*Id.*]. Accordingly, ICE scheduled [DE 7 at 35] and Petitioner received [DE 11 at 67] a credible-fear interview with an asylum officer. As a result of that hearing, Petitioner was placed in standard removal proceedings before an immigration judge. [DE 11 at 67].

Petitioner is currently detained at the Grayson County Jail in Leitchfield, Kentucky. [DE 1 at 5]. Petitioner filed a petition for writ of habeas corpus on June 2, 2026, seeking release or, in the alternative, a bond hearing. [DE 1 at 17]. Petitioner has not received a bond hearing. [DE 1 at 3; *see also* DE 11 at 68].

## II. MOTION TO SUPPLEMENT

As an initial matter, the Court must consider Petitioner's motion [DE 11] to supplement her reply. The consideration of motions to supplement ultimately resides with the district court's discretion. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 881-82 (6th Cir. 2006) (noting that the abuse of discretion standard governs review of the denial of motions to supplement). Courts may grant parties leave to file supplemental authority "in the interests of justice when the proposed submission contains 'new authority or evidence that was not available [to the movant] in the exercise of reasonable diligence' when the original briefs were filed." *Valassis Commc'ns, Inc. v. News Corp.*, No. 13-14654, 2015 WL 13050049, at *1 (E.D. Mich. Dec. 23, 2015) (quoting *Harshaw v. Bethany Christian Servs.*, No. 1:08-CV-104, 2010 WL 610262, at *1 (W.D. Mich. Feb. 19, 2010)); *see also Tera II, LLC v. Rice Drilling D, LLC*, No. 2:19-CV-2221, 2023 WL 2664415, at *5 (S.D. Ohio Mar. 28, 2023). Here, Petitioner notes that Petitioner received a

credible-fear interview from an asylum officer and was placed in standard proceedings in front of an immigration judge. [DE 11 at 67]. Petitioner also supplements her arguments based on this change in factual circumstances. [*See id.*]. At the time of Respondents' response and Petitioner's reply, Petitioner was merely "awaiting" a credible-fear interview. [DE 7 at 35]. Accordingly, the results of that interview constitute new facts that were "'not available [to Petitioner] in the exercise of reasonable diligence' when the original briefs were filed." *Valassis Commc'ns, Inc*, 2015 WL 13050049, at *1 (quoting *Harshaw*, 2010 WL 610262 at *1)].

Because this Court has "broad discretion to manage its docket," *see ACLU of Kentucky v. McCreary Cnty.*, 607 F.3d 439, 451 (6th Cir. 2010), and the Sixth Circuit has a "strong preference that claims be adjudicated on their merits," *see Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003), Petitioner's motion to supplement [DE 11] is **GRANTED**.

## III. PETITION FOR WRIT OF HABEAS CORPUS

### A. Petitioner is detained under Section 1226(a), not Section 1225(b)(1)(B)(ii)

In the Petition, Petitioner asserts that her continued detention is unlawful and violates due process and statutory rights under the Immigration and Nationality Act (INA) because she is properly detained, if at all, under Section 236 of the INA, codified at 8 U.S.C. § 1226(a). [DE 1 at 15-18]. Section 1226(a) provides that noncitizens in removal proceedings may be detained but are eligible for release on bond. *See* 8 U.S.C. § 1226(a).

Respondents argue that Petitioner is properly detained under 8 U.S.C. § 1225(b)(1)(B)(ii), which authorizes mandatory detention. [DE 7 at 38] *See* 8 U.S.C. § 1225(b)(1)(B)(ii). According to Respondents,

> [Petitioner] was placed in expedited removal proceedings and paroled. Upon termination/expiration of her parole she was required to be restored to the status she had been in at the time of her parole, i.e. mandatory detention pursuant to 8 U.S.C. § 1225(b)(1). She is now awaiting a credible fear interview. In accordance

> with the statute and the Supreme Court, Petitioner "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Thuraissigiam*, 591 U.S. at 111 (citing 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).) Thus, Petitioner's request for release and for bond are contrary to 8 U.S.C. § 1225(b)(1)(B)(ii).

[DE 7 at 38].[2] Respondents therefore conclude that Petitioner has not been deprived of due process because Petitioner "is receiving the process Congress provided, including a credible fear interview" and "Petitioner is not owed any more process than Congress has authorized[.]" [*Id.* at 39].

The argument that a noncitizen remains in mandatory detention under § 1225(b)(1)(B)(ii) after being found by an asylum officer to have a credible fear of persecution and being placed into proceedings before an immigration judge was considered and rejected by this Court in *Singh v. Hott*, No. 4:26-CV-256-DJH, 2026 WL 1880217, at *4 (W.D. Ky. June 30, 2026) (concluding that the petitioner was "detained under § 1226(a), not § 1225(b)(1)(B)(ii), because an officer finished considering his asylum application" when petitioner was placed into standard removal proceedings before an immigration judge). Although not binding, the Court finds the analysis in *Singh* to be persuasive. Accordingly, consistent with *Singh*'s reasoning and with this Court's prior opinion in *Kumar v. Lewis, et al.*, No. 4:26-cv-470-RGJ, 2026 WL 3120731 (W.D. Ky. Oct. 19, 2026), the Court finds that § 1226, rather than § 1225, governs Petitioner's detention.

Relevant here, Section 1225(b)(1) governs "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." § 1225(b)(1). "Section 1225(b) requires mandatory detention" for noncitizens subject to expedited removal under § 1225(b)(1). *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 293 (E.D.N.Y. 2025). The

[2] The Court notes that Petitioner has now received the credible-fear interview, as set forth in Petitioner's motion to supplement [DE 11 at 67]. Given that Respondents did not respond to Petitioner's motion or themselves move to supplement, the Court assumes that Respondents arguments for Petitioner's detention remain the same after Petitioner has received the credible-fear interview.

statute states in relevant part:

> (A) Screening
>
> (i) In general
>
> If an immigration officer determines that an alien ... who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution.
>
> (ii) Claims for asylum
>
> If an immigration officer determines that an alien ... who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer.

§ 1225(b)(1)(A)(i)–(ii). Thus, "[a]pplicants can avoid expedited removal by claiming asylum." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). "The point of th[e] screening interview is to determine whether the applicant has a 'credible fear of persecution.'" *Id.* (quoting § 1225(b)(1)(B)(v)). "The applicant need not show that he or she is in fact eligible for asylum—a 'credible fear' equates to only a 'significant possibility' that the alien would be eligible." *Id.* (emphasis omitted) (quoting § 1225(b)(1)(B)(v)).

Section 1225(b)(1)(B)(ii) provides that if an asylum officer "determines at the time of the [credible-fear] interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). "The plain meaning of [that provision] is that detention must continue until immigration officers have finished

'consider[ing]' the application for asylum."[3] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (second alteration in original) (discussing §§ 1225(b)(1)(B)(ii), (b)(2)(A)). Once consideration of the asylum application ends, "detention under § 1225(b) must end as well." *Id.* at 297. Pursuant to accompanying regulations, upon an asylum officer's finding of credible fear, U.S. Citizenship and Immigration Services ("USCIS") "has complete discretion to either issue a Form I-862, Notice to Appear, for full consideration of the asylum . . . claim in [standard removal] proceedings under [8 U.S.C. § 1229a], or retain jurisdiction over the application for asylum pursuant to [8 C.F.R.] § 208.2(a)(1)(ii) for further consideration in a hearing pursuant to [8 C.F.R.] § 208.9." 8 C.F.R. § 208.30(f); *see Thuraissigiam*, 591 U.S. at 110 (discussing 8 C.F.R. § 208.30(f)). In a standard removal hearing, an immigration judge considers the noncitizen's asylum application. *See Thuraissigiam*, 591 U.S. at 110. But pursuant to 8 C.F.R. § 208.9, an asylum officer may further consider the asylum application via an interview and issue a decision. *See* 8 C.F.R. § 208.9(b), (d); see also 8 C.F.R. § 208.14(b)–(c) (providing authority for asylum officer to grant or deny asylum applications).

Here, Petitioner received a credible-fear interview before an asylum officer, the asylum officer found that Petitioner had a credible fear of persecution, and Petitioner was then placed into standard removal proceedings before an immigration judge pursuant to 8 C.F.R. § 208.30(f). [DE 11 at 67]. Petitioner was mandatorily detained under 8 U.S.C. § 1225(b)(1)(B)(ii) until "the officer's consideration of [her] asylum application concluded because [Petitioner] was placed in standard removal proceedings before an immigration judge." *Singh*, 2026 WL 1880217, at *3. By placing Petitioner in standard removal proceedings, USCIS thereby declined to "retain jurisdiction

[3] Although § 1225(b)(1)(B) refers to a credible-fear finding by an asylum officer, *see* § 1225(b)(1)(B)(i)–(ii), and distinguishes immigration officers from asylum officers, *see* § 1225(b)(1)(A)(i)–(ii), the *Jennings* opinion refers to asylum officers as immigration officers for purposes of § 1225(b)(1)(B)(ii). *See* 583 U.S. at 299.

over the application for asylum pursuant to § 208.2(a)(1)(ii) *for further consideration* in a hearing pursuant to § 208.9," 8 C.F.R. § 208.30(f) (emphasis added). This decision means that Petitioner's "detention under § 1225(b) must end as well." *Jennings*, 583 U.S. at 299.

Although Petitioner's asylum application technically remains under consideration, [DE 11 at 67 ("The merit hearing [on Petitioner's asylum claim] is scheduled with an immigration judge[.]")], § 1225(b)(1)(B)(ii) does not suggest that an immigration judge constitutes an "immigration officer" who "consider[s]" Petitioner's application under that provision. *See Jennings*, 583 U.S. at 299; 8 U.S.C. § 1101(a)(18) (defining immigration officer); 8 U.S.C. § 1101(b)(4) (defining immigration judge); *see also dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *8 n.11 (D. Mass. Aug. 14, 2025) (distinguishing between statutory definition of "immigration officer" and "immigration judge" to conclude that petitioner was not detained under § 1225(b)(1)(B)(ii) after he received "a positive credible fear finding" from an immigration officer and was placed in standard removal proceedings before an immigration judge); *cf. Kumar*, 2026 WL 3120731 at *3 (finding that the Board of Immigration Appeals did not constitute an "'immigration officer' who 'consider[s]' [Petitioner's] application under [§ 1225(b)(1)(B)(ii)]") (quoting *Jennings*, 583 U.S. at 299).

In support of the opposite conclusion, Respondents rely on the decision in *Matter of M-S-*, 27 I & N Dec. 509 (A.G. 2019). [DE 7 at 37]. In that case, the Attorney General interpreted § 1225(b)(1)(B)(ii) to require that "unless paroled, an alien must be detained until his asylum claim is adjudicated," elaborating that "The Supreme Court recently held exactly that [in *Jennings v. Rodriguez*], concluding that section 235(b)(1)[, codified at 8 U.S.C. § 1225(b)(1),] 'mandate[s] detention throughout the completion of [removal] proceedings' unless the alien is paroled." *Matter of M-S-*, 27 I & N Dec. at 510 (quoting *Jennings*, 583 U.S. at 844-45) (third and fourth alterations

in original). For the reasons explained in *Singh*, 2026 WL 1880217, at *3, this case is unpersuasive. *Matter of M-S-* incorrectly interpreted *Jennings* to hold "that [§ 1225(b)(1)] 'mandate[s] detention throughout the completion of [removal] proceedings' unless the alien is paroled." 27 I. & N. Dec. at 510. But *Jennings* only states that detention is mandatory "until immigration officers have finished 'consider[ing]' the application for asylum." 583 U.S. at 299.

Accordingly, consistent with the Court's prior opinion in *Kumar*, 2026 WL 3120731, the Court concludes that Petitioner is detained under § 1226(a), not § 1225(b)(1)(B)(ii).

**B. Due Process.**

Petitioner asserts that her continued detention without a bond hearing violates (1) the Immigration and Nationality Act; (2) 8 C.F.R. §§ 236.1, 1236.1 and 1003.19; and (3) the Due Process Clause. [DE 1 at 15-17]. The Court first turns to Petitioner's contention that her continued detention without a bond hearing violates due process under the Fifth Amendment. Because the Court concludes that it does, the Court need not reach Petitioner's other bases for habeas relief.

Having determined that Petitioner's detention is governed by § 1226(a), Respondents' arguments as to the due process required by § 1225(b)(1)(B)(ii) are futile. [*See* DE 7 at 39 ("Congress mandated detention of applicants for admission during removal proceedings under 8 U.S.C. § 1225(b)(1), and the Supreme Court confirmed that detention pending admissibility/removal determinations is constitutionally permissible.")]. Like the petitioners in *Lopez-Campos v. Raycraft*, Petitioner has "a liberty interest to be free from detention." 175 F.4th 713, 734 (6th Cir. 2026). Deprivation of that interest "without bond under § 1226(a) [is] a deprivation of liberty that violates [her] due process rights" and makes her continued detention unlawful. *Id.*

**C. Remedy.**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Petitioner is currently being held in mandatory detention and has been for over five months. As such, her continued dentition, however transitory, is unlawful. Accordingly, the Court will order Petitioner's release. This is in line with the remedies fashioned by other district courts in this circuit. *See*, *e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending

a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Petitioner's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Petitioner, absent a material change in circumstances, they must provide Petitioner with a bond hearing pursuant to Section 1226(a).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner immediately because of the unlawful detention in violation of her due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket by **November 14, 2026.**

**IT IS FURTHER ORDERED** that Petitioner's motion to supplement [DE 11] is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

November 13, 2026